UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHRISTOPHER BUCKENBERGER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-7393** |
| **WALTER REED - DISTRICT ATTORNEY, ET AL.** | **SECTION: "F"(3)** |

### PARTIAL REPORT AND RECOMMENDATION

Plaintiff, Christopher Buckenberger, a state pretrial detainee, filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against Walter Reed, Joseph Oubre, Scott Gardner, Ernest Barrows, Robert Stamps, John Simmons, and Haywood Jarrell.[1]

Because plaintiff's complaint was virtually incomprehensible, a Spears hearing was held on October 26, 2006, to allow him a meaningful opportunity to advise the Court of the nature and factual basis of his claims. See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).[2] At that hearing,

---

[1] In a memorandum subsequently filed by plaintiff, he also refers to Carol Golson, Deputy Futch, Michael Stephens, and St. Tammany Parish as defendants. Rec. Docs. 25 and 26. However, plaintiff has neither properly requested nor been granted leave to amend his complaint to name Golson, Futch, Stephens, or the parish as defendants.

[2] "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed.R.Civ.P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996). Spears hearing testimony becomes a part of the total filing by the *pro se* applicant. Id.

plaintiff was sworn and his testimony was recorded. Based on his complaint and Spears hearing testimony, the Court finds that plaintiff is making the following allegations in support of his complaint.

On February 22, 2006, plaintiff was arrested for attempted murder and simple assault on a police officer. In the instant lawsuit, he claims that he was arrested without a warrant and has never been afforded a probable cause hearing.

Among the defendants named in this lawsuit are St. Tammany Parish District Attorney Walter Reed, Assistant District Attorney Joseph Oubre, and Assistant District Attorney Scott Gardner. Plaintiff conceded that Reed apparently has no personal involvement in the state court proceedings; rather, the case is being prosecuted by Oubre and Gardner. Plaintiff claims that Oubre and Gardner have falsely represented to the trial judge that a probable cause hearing has been held.

Also named as defendants are Robert Stamps, Ernest Barrows, and John Simmons. Stamps is the indigent defender originally appointed to represent plaintiff; however, Stamps was subsequently replaced due to the fact that he had been involved in prior criminal prosecution of plaintiff. Simmons, who is the director of the Indigent Defender Board, then selected Barrows to represent plaintiff. Plaintiff alleges that because Barrows was formerly a public defender, he likewise labors under a conflict of interest. Plaintiff feels that Simmons should not have selected either Stamps or Barrows for the case, but instead should have selected an attorney with no prior involvement with the Indigent Defender Board. Plaintiff complains that neither Stamps nor Barrows would argue in the state court proceedings that plaintiff's rights were violated by the failure to hold a probable cause hearing.

As to defendant Jarrell, plaintiff claims that Jarrell (1) arrested plaintiff without probable cause and (2) failed to secure for him a probable cause hearing within forty-eight hours.

At the <u>Spears</u> hearing, plaintiff stated that the only relief he was seeking was an order that the state courts be required to afford him a probable cause determination.

After the <u>Spears</u> hearing, plaintiff filed a motion asking that he be allowed to file a memorandum in support of his claims prior to the issuance of a Report and Recommendation in this case.[3]  That motion was granted, and plaintiff was given until November 22, 2006, to file such a memorandum.[4]  At plaintiff's request,[5] that deadline was subsequently extended to December 22, 2006.[6]

Since the <u>Spears</u> hearing, plaintiff has inundated this Court with similarly inscrutable filings in which he seeks to explain and alter his claims.  To the extent that those filings can be deciphered, it appears that they affect plaintiff's claims as follows:

1. Plaintiff again makes clear that he does not "seek immediate - speedier release," does not "challenge fact-duration of confinement," and does not "seek release without bond."[7]

---

[3] Rec. Doc. 11.

[4] Rec. Doc. 17.

[5] Rec. Doc. 16.

[6] Rec. Doc. 18.

[7] Rec. Doc. 19, pp. 1-2.  See <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.").

2. Contrary to plaintiff's representations at the <u>Spears</u> hearing, he now also seeks monetary damages in this lawsuit.[8]

3. Although plaintiff seemed to retreat from such a claim at the <u>Spears</u> hearing, he apparently wishes to go forward with a claim that Jarrell used excessive force to effect the arrest on February 22, 2006.[9]

This Court is statutorily mandated to "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).[10]

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit,[11] federal law similarly provides:

---

[8] Rec. Docs. 12 and 17.

[9] <u>See</u> Rec. Doc. 25.

[10] "[T]he term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

[11] Rec. Docs. 2 and 3.

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

The Court has broad discretion in determining the frivolous nature of the complaint. Cay v. Estelle, 789 F.2d 318, 325 (5th Cir. 1986), modified on other grounds, Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993). In making that determination, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994). Thus, a complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994); Booker, 2 F.3d at 115 & n.6. Broadly reading plaintiff's complaint, as amended,[12] and fully considering his Spears hearing testimony, the Court finds that many of his claims lack any arguable basis in law and fact and should be dismissed as frivolous, for otherwise failing to state a claim on which relief may be granted, and/or for seeking monetary damages against a defendant who is immune from such relief.

---

[12] The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

5

<u>Claims Against Walter Reed, Joseph Oubre, and Scott Gardner</u>

As noted, Walter Reed is the St. Tammany Parish District Attorney, and Joseph Oubre and Scott Gardner are his assistants handling plaintiff's state criminal prosecution. The claims against these defendants in their individual capacities should be dismissed because they enjoy absolute prosecutorial immunity for the actions they have taken with respect to that prosecution. "Prosecutorial immunity applies to the prosecutor's actions in initiating the prosecution and in carrying the case through the judicial process." <u>Boyd v. Biggers</u>, 31 F.3d 279, 285 (5th Cir. 1994). A prosecutor's absolute immunity also extends to "actions preliminary to the initiation of a prosecution and actions apart from the courtroom." <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 272 (1993) (quotation marks omitted). Further, "[a]bsolute immunity shelters prosecutors even when they act maliciously, wantonly or negligently." <u>Rykers v. Alford</u>, 832 F.2d 895, 897 (5th Cir. 1987) (quotation marks omitted). If plaintiff believes that actions taken in his prosecution have been improper, his recourse is to challenge those actions in the state court proceedings, not to sue the prosecuting attorneys in a federal civil rights action.[13]

---

[13] Moreover, the Court notes that plaintiff acknowledged at the <u>Spears</u> hearing that Reed had no personal involvement in the criminal prosecution challenged herein. Therefore, on that ground alone, there would be no basis for the claim against Reed. "Personal involvement is an essential element of a civil rights cause of action." <u>Thompson v. Steele</u>, 709 F.2d 381, 382 (5th Cir. 1983). Although Reed holds a supervisory position, an official cannot be liable under § 1983 based on a theory of vicarious liability. <u>Thompkins v. Belt</u>, 828 F.2d 298, 303 (5th Cir. 1987); <u>see also</u> <u>Oliver v. Scott</u>, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability.").

To the extent that plaintiff is asserting claims against these defendants in their official capacities,[14] he has failed to state such a claim.  "Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent."  <u>Burge v. Parish of St. Tammany</u>, 187 F.3d 452, 466 (5th Cir. 1999).  Accordingly, an official-capacity claim against these defendants would in reality be a claim against the St. Tammany Parish District Attorney's Office.  However, in order to hold a local governmental body accountable for a constitutional violation, a plaintiff must allege that (1) an employee of the local governmental body violated plaintiff's clearly established constitutional rights with subjective deliberate indifference, and (2) the violation resulted from a policy or custom adopted or maintained by the local governmental body with objective deliberate indifference.  <u>See</u> <u>Olabisiomotosho v. City of Houston</u>, 185 F.3d 521, 528-29 (5th Cir. 1999).  Plaintiff does not allege that the purported constitutional violations in this case stemmed from an official policy or custom of the St. Tammany Parish District Attorney's Office.

<u>Claims Against Robert Stamps, Ernest Barrows, and John Simmons</u>

Robert Stamps, Ernest Barrows, and John Simmons are private individuals affiliated with the Indigent Defender Board, which is providing plaintiff's representation in his state criminal proceedings.  For plaintiff's claims against them to be cognizable pursuant to § 1983, they must be acting under color of state law.[15]  <u>See, e.g.</u>, <u>Wong v. Stripling</u>, 881 F.2d 200, 202 (5th Cir. 1989) ("A

---

[14] <u>See</u> Rec. Doc. 25, p. 1.

[15] Section 1983 of the United States Code, Title 42, provides that:

> Every person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia*, subjects, or causes to be subjected, any citizen of the United States or other person within the

7

claim for relief under 42 U.S.C. § 1983 must contain two elements: 1) that [the plaintiff has] been deprived of a right secured by the Constitution or laws of the United States; and 2) that the defendant acted under color of state law.") However, it is clear that normally "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." Polk County v. Dodson, 454 U.S. 312, 325 (1981).

The Court notes that in some circumstances a defense attorney can be held liable under § 1983 if he illegally conspired with the prosecution to deprive the criminal defendant of his constitutional rights. See Mills v. Criminal District Court #3, 837 F.2d 677, 679 (5th Cir. 1988). The Court further notes that plaintiff alleges the existence of such a conspiracy in this case.[16] However, plaintiff's allegations in that regard are conclusory at best. Conclusory allegations of conspiracy fail to state a § 1983 cause of action. Russell v. Millsap, 781 F.2d 381, 383 (5th Cir. 1985); Wilson v. Budney, 976 F.2d 957, 958 (5th Cir. 1992).

Accordingly, for the foregoing reasons, the Court finds that the claims against Robert Stamps, Ernest Barrows, and John Simmons should be dismissed.

### Claims Against Haywood Jarrell

As noted, plaintiff asserts three claims against Jarrell: (1) plaintiff was falsely arrested by Jarrell; (2) Jarrell used excessive force to effect that arrest; and (3) Jarrell failed to secure a timely

---

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress .... (Emphasis added.)

[16] See, e.g., Rec. Doc. 25, pp. 17 and 22.

8

probable cause determination after the arrest. For the following reasons, the Court finds that, at least at this point, those individual-capacity claims against Jarrell should be allowed to proceed.[17]

As to the false arrest claim, the United States Supreme Court recently made clear that an arrestee is entitled to bring suit for false arrest as of the moment of his arrest, and that Heck v. Humphrey, 512 U.S. 477 (1994), does not dictate a different result. Wallace v. Kato, 127 S.Ct. 1091, 1096 n.3 and 1097-1100 (2007). Accordingly, despite the fact that plaintiff's underlying criminal proceedings remain pending, he is not precluded from asserting a false arrest claim at this time.

As to the excessive force claim, that claim at first appeared to be barred by Heck because, in connection with the incident, plaintiff was charged with assault on a police officer. See Hudson v. Hughes, 98 F.3d 868, 873 (5th Cir. 1996). However, it appears from plaintiff's most recent filings that he may now be alleging that he has obtained a favorable resolution on that charge. *If so*, he would not be precluded from pursuing an excessive force claim at this time.

Plaintiff's final claim is that Jarrell failed to secure a probable cause determination within forty-eight hours of plaintiff's warrantless arrest. For the following reasons, the Court finds that claim to be cognizable pursuant to Gerstein v. Pugh, 420 U.S. 103 (1975), and County of Riverside v. McLaughlin, 500 U.S. 44 (1991).[18]

---

[17] However, to the extent that plaintiff is asserting official-capacity claims against Jarrell, those claims should be dismissed because plaintiff does not allege that the purported constitutional violations in this case resulted from an official policy or custom of the local governmental body Jarrell serves.

[18] At the stage of the proceeding, of course, the Court makes no determination as to the validity of plaintiff's claim based solely on his allegations. To the contrary, the Court notes that plaintiff would not necessarily be aware that such a determination was timely made, in that neither federal

In <u>Gerstein</u>, the plaintiffs asserted a general challenge to Florida's practice of allowing individuals to be detained pending state criminal proceedings for a substantial period of time without probable cause hearings based solely on the filing of bills of information. Finding that practice to run afoul of the Fourth Amendment's "protection against unfounded invasions of liberty and privacy," the United States Supreme Court held that the state "must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest." <u>Gerstein</u>, 420 U.S. at 112 and 125 (footnotes omitted).

Sixteen years later, in <u>County of Riverside</u>, the Supreme Court revisited <u>Gerstein</u> because its "promptness" standard had proven to be unworkably vague. The Supreme Court noted:

> Our task in this case is to articulate more clearly the boundaries of what is permissible under the Fourth Amendment. Although we hesitate to announce that the Constitution compels a specific time limit, it is important to provide some degree of certainty so that States and counties may establish procedures with confidence that they fall within constitutional bounds. Taking into account the competing interests articulated in <u>Gerstein</u>, we believe that a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of <u>Gerstein</u>. For this reason, such jurisdictions will be immune from systemic challenges.

<u>County of Riverside</u>, 500 U.S. at 56. However, the Court continued:

> This is not to say that the probable cause determination in a particular case passes constitutional muster simply because it is provided within 48 hours. Such a hearing may nonetheless violate <u>Gerstein</u> if the arrested individual can prove that his or her probable cause determination was delayed unreasonably. Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or

---

nor state law requires that such a determination be made in an adversarial hearing or with the arrestee being present. <u>Gerstein</u>, 420 U.S. at 120-25; La.C.Cr.P. art. 230.2; <u>State v. Hughart</u>, 801 So.2d 388 (La. 2000).

...

> delay for delay's sake. In evaluating whether the delay in a particular case is unreasonable, however, courts must allow a substantial degree of flexibility. Courts cannot ignore the often unavoidable delays in transporting arrested persons from one facility to another, handling late-night bookings where no magistrate is readily available, obtaining the presence of an arresting officer who may be busy processing other suspects or securing the premises of an arrest, and other practical realities.
>
>> Where an arrested individual does not receive a probable cause determination within 48 hours, the calculus changes. In such a case, the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance. The fact that in a particular case it may take longer than 48 hours to consolidate pretrial proceedings does not qualify as an extraordinary circumstance. Nor, for that matter, do intervening weekends.

Id. at 56-57.

The Court further finds that Jarrell, as the arresting officer, is the proper defendant to be named with respect to such a claim, in that he is the individual responsible for securing such determinations under state law.[19] Louisiana law provides:

> A law enforcement officer effecting the arrest of a person without a warrant shall promptly complete an affidavit of probable cause supporting the arrest of the person and submit the same to a magistrate. Persons continued or remaining in custody pursuant to an arrest made without a warrant shall be entitled to a determination of probable cause within forty-eight hours of arrest. The probable cause determination shall be made by a magistrate and shall not be an adversary proceeding. The determination may be made without the presence of the defendant and may be made upon affidavits or other written evidence. A magistrate's determination of probable

---

[19] The Supreme Court has made clear that the precise mechanism by which the constitutional protection at issue is met is a matter left to the individual states:

> [W]e recognize that state systems of criminal procedure vary widely. There is no single preferred pretrial procedure, and the nature of the probable cause determination usually will be shaped to accord with a State's pretrial procedure viewed as a whole. While we limit our holding to the precise requirement of the Fourth Amendment, we recognize the desirability of flexibility and experimentation by the States.

Gerstein, 420 U.S. at 123.

cause hereunder shall not act as a waiver of a person's right to a preliminary examination pursuant to Article 292.

La.C.Cr.P. art. 230.2(A); accord Leschorn v. Fitzgerald, No. 97-3421, 1998 WL 69036, at *2 (6th Cir. Feb. 9, 1998) ("[T]he overwhelming body of law has always been that the person effecting a warrantless arrest of a suspect is the individual charged with delivering the arrestee to a magistrate as soon as practicable.").

That said, the Court turns to the forms of relief plaintiff has requested in this action. The Court finds that one form of relief he has requested is potentially available; however, the other clearly is not.

As noted, plaintiff has amended his original prayer for relief to include a request for monetary damages. If plaintiff does indeed prove that he was detained without a timely probable cause determination, he may be entitled to monetary damages. See, e.g., Young v. Graham, No. CV 304-066, 2005 WL 2237634, at *4 (S.D. Ga. Aug. 11, 2005).

However, as for plaintiff's request that this Court order the state courts to hold a probable cause hearing, that form of relief is not available. Contrary to plaintiff's argument, Gerstein does not hold otherwise.

Although the plaintiffs in Gerstein were allowed to pursue their challenge in that case, "the constitutional validity of a method of pretrial procedure, *rather than its application to any particular case*, was the focus of the challenge." Tedford v. Hepting, 990 F.2d 745, 749 (3rd Cir. 1993) (emphasis added). In deciding Gerstein, the Supreme Court expressly noted that the claim therein did not run afoul of the general prohibition against federal intervention in state prosecutions set forth in Younger v. Harris, 401 U.S. 37 (1971), because the challenge "was not directed at the state

prosecutions as such, but only the legality of pretrial detention with a judicial hearing, an issue that could not be raised in defense of the criminal prosecution." Gerstein, 420 U.S. at 108 n.9.

Noting that the foregoing comment in Gerstein "must be viewed in the light of the factual and legal setting the Court encountered," the United States Second Circuit Court of Appeals subsequently observed:

> [T]he Younger doctrine is based not only on a reluctance to interfere with state processes, but also on the refusal to afford equitable relief when adequate remedies at law exist. It is significant, therefore, that the Supreme Court's opinion in Gerstein emphasizes at the outset that the federal plaintiffs there had no right to institute state habeas corpus proceedings except perhaps in exceptional circumstances and that their only other state remedies were a preliminary hearing which could take place only after 30 days or an application at arraignment, which was often delayed a month or more after arrest. 420 U.S. at 107, 95 S.Ct. at 859. We do not consider this discussion feckless.

Wallace v. Kern, 520 F.2d 400, 406 (2nd Cir. 1975). Accordingly, the Court of Appeals held:

> [T]he language of footnote 9 of Gerstein must be read in the full context of the Younger rule, which rests on principles of equity as well as comity. When so considered, it clearly is not decisive of this issue.
> In addition, we note that the district court conclusion in the Gerstein case that Younger did not apply was specifically coupled with the finding that Florida had consistently held that detainees such as the plaintiffs in that case were not entitled to a preliminary hearing of any kind. [Pugh v. Rainwater, ] 332 F.Supp. 1107, 1111-12 (S.D. Fla. 1971). This is important since to come within the Younger rubric, as re-emphasized in Huffman v. Pursue, Ltd., [420 U.S. 592 (1975)] and Schlesinger v. Councilman, [420 U.S. 738 (1975)], a plaintiff must establish "irreparable harm."

Id. at 407.

Likewise, the United States Eleventh Circuit Court of Appeals has held: "The permissibility of federal equitable relief in Gerstein was based upon the absence of an adequate state forum for raising the issue." Pompey v. Broward County, 95 F.3d 1543, 1550 (11th Cir. 1996). Where state

remedies are available, the Gerstein exception to the Younger doctrine is simply inapplicable. Id. at 155.

In the instant case, plaintiff does not argue that Louisiana law provides no mechanism for prompt probable cause hearings for state pretrial detainees. Quite to the contrary, he acknowledges that La.C.Cr.P. art. 230.2 expressly requires judicial probable cause determinations within forty-eight hours of a warrantless arrest. Plaintiff's claim is simply that authorities failed to meet the forty-eight-hour requirement *in his particular case*.

Even if that in fact occurred, plaintiff need not run to federal court to secure a probable cause determination; rather, he need only avail himself of the protections of La.C.Cr.P. art. 292. That article provides that, if there has been no grand jury indictment, the trial court is required to order a preliminary examination to determine probable cause upon the request of the defendant. Moreover, if a defendant believes that he has been wrongly denied a preliminary examination, he may seek supervisory review. La.C.Cr.P. 292, Comment (b).[20] Clearly, plaintiff has a mechanism by which he can secure a probable cause hearing through the state courts, and his failure to avail himself of that opportunity does not mean either that the state procedures are inadequate or that the Younger abstention doctrine is inapplicable. See Juidice v. Vail, 430 U.S. 327, 337 (1977).

---

[20] To the extent that plaintiff is arguing that he is entitled to a probable cause determination under article 230.2 or release on his own recognizance based on his allegation that Jarrell failed to comply with that article, he is incorrect. In connection with this case, plaintiff has submitted to this Court an excerpt from a transcript which clearly indicates that a bill of information has been filed in his state criminal proceedings. See Rec. Doc. 10, p. 4. Accordingly, he is currently detained based on that bill of information, not his original arrest. If he wants a probable cause hearing to determine the validity of his continued detention on the formal charges against him, article 292 applies and he need only request such a hearing.

14

In light of the foregoing, the Court finds that, contrary to plaintiff's argument, Gerstein provides him with no basis for securing a probable cause determination by filing suit in federal court. Rather, plaintiff's case falls within the general rule that federal courts generally should not intervene in the manner in which state judicial officers conduct criminal proceedings. As the United States Supreme Court noted in O'Shea v. Littleton, 414 U.S. 488 (1974):

> [R]ecognition of the need for a proper balance in the concurrent operation of federal and state courts counsels against the issuance of injunctions against state officers engaged in the administration of the State's criminal laws in the absence of a showing of irreparable injury which is both "great and immediate." Id., at 46, 91 S.Ct., at 751.

O'Shea, 414 U.S. at 499.

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's claims against Walter Reed, Joseph Oubre, Scott Gardner, Ernest Barrows, Robert Stamps, and John Simmons be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

It is **FURTHER RECOMMENDED** that plaintiff's official-capacity claim against Haywood Jarrell be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1). However, it is **RECOMMENDED** that plaintiff's individual-capacity claims be allowed to proceed for further consideration.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court,

provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twelfth day of April, 2007.

                                              **DANIEL E. KNOWLES, III**
                                              **UNITED STATES MAGISTRATE JUDGE**