UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHRISTOPHER BUCKENBERGER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-7393** |
| **WALTER REED - DISTRICT ATTORNEY, ET AL.** | **SECTION: "F"(3)** |

### REPORT AND RECOMMENDATION

Currently pending before the Court is a motion for summary judgment filed by the remaining defendants, Haywood Jarrell and the City of Madisonville.[1] Plaintiff opposes that motion.[2] For the following reasons, the undersigned recommends that the motion be **DENIED**.

I. Procedural Background

Plaintiff, Christopher Buckenberger, a state prisoner, filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983. In the original complaint, he sued Walter Reed, Joseph Oubre, Scott Gardner, Ernest Barrows, Robert Stamps, John Simmons, and Haywood Jarrell. Because plaintiff's complaint was virtually incomprehensible, the Court directed that issuance of summons be withheld until the complaint could be screened as mandated by 28 U.S.C. § 1915A.

---

[1] Rec. Doc. 193.

[2] Rec. Docs. 216 and 227.

A Spears hearing was then held on October 26, 2006, to allow plaintiff a meaningful opportunity to advise the Court of the nature and factual basis of his claims. See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). Based on plaintiff's filings and Spears hearing testimony, the Court determined that plaintiff was claiming that (1) he was falsely arrested for attempted murder and simple assault on a police officer, (2) excessive force was used to effect that arrest, and (3) he was not afforded a timely judicial probable cause determination.

On April 12, 2007, the undersigned issued a report making the following recommendations:

1. The individual-capacity claims against Reed, Oubre, and Gardner should be dismissed based on absolute prosecutorial immunity;

2. The official-capacity claims against Reed, Oubre, and Gardner should be dismissed based on plaintiff's failure to allege that the purported constitutional violations stemmed from an official policy or custom;

3. The claims against Stamps, Barrows, and Simmons should be dismissed because they are not state actors;

4. The official-capacity claims against Jarrell should be dismissed based on plaintiff's failure to allege that the purported constitutional violations stemmed from an official policy or custom; and

5. The individual-capacity claims against Jarrell should be allowed to proceed pending further review.[3]

---

[3] Rec. Doc. 34. Based on the finding that only the individual-capacity claims against Jarrell should be allowed to proceed, the undersigned ordered that summons be issued with respect to that defendant alone.

2

On May 18, 2007, the United States District Judge adopted the report and recommendations and dismissed with prejudice all of plaintiff's claims except for the individual-capacity claims against Jarrell.[4]

On September 6, 2007, Jarrell then filed a motion for summary judgment asking that the individual-capacity claims against him be dismissed.[5] Plaintiff opposed that motion.[6] On November 19, 2007, the undersigned issued a report making the following recommendations:

1. The claims against Jarrell for false arrest and excessive force should be dismissed as currently barred by Heck v. Humphrey, 512 U.S. 477 (1994); and

2. The claim against Jarrell for failing to secure a timely judicial probable cause determination should be dismissed because, even if a constitutional violation had been committed in that respect, Jarrell was not responsible for the violation because he had transferred custody of plaintiff to the St. Tammany Parish Sheriff's Office long before any impermissible delay occurred.[7]

---

[4] Rec. Doc. 41.

[5] Rec. Doc. 86.

[6] Rec. Docs. 105 and 112.

[7] Rec. Doc. 121.

On January 10, 2008, the United States District Judge adopted the report and recommendations and dismissed the individual-capacity claims against Jarrell.[8] Judgment was entered.[9]

Plaintiff appealed.[10] On August 18, 2009, the United States Fifth Circuit Court of Appeals affirmed in part, reversed in part, and remanded the matter for further proceedings.[11] The *only* part of this Court's judgment which was reversed was the dismissal of the individual-capacity claim against Jarrell for failing to secure a timely judicial probable cause determination.

After remand, plaintiff conducted discovery and filed a motion to amend the complaint to add claims against the City of Madisonville, St. Tammany Parish Sheriff Jack Strain, District Attorney Walter Reed, and Assistant District Attorney Bruce Dearing.[12] That motion was granted as to the City of Madisonville, and the complaint was deemed amended to assert a claim that the City failed to properly train Officer Haywood Jarrell; however, the motion was denied in all other respects.[13]

---

[8] Rec. Doc. 128.

[9] Rec. Doc. 129.

[10] Rec. Doc. 132.

[11] Rec. Doc. 145; Buckenberger v. Reed, 342 Fed. App'x 58 (5th Cir. 2009).

[12] Rec. Doc. 168.

[13] Rec. Doc. 171.

As noted, Jarrell and the City of Madisonville have now filed a motion for summary judgment with respect to the remaining claims against them,[14] and plaintiff opposes that motion.[15]

## II.  Factual Background

The facts in the instant case are relatively simple.  Jarrell, an officer with the Madisonville Police Department, arrested plaintiff on February 22, 2006.  Plaintiff was booked with simple battery on a police officer, resisting arrest, aggravated assault on a police officer, attempted rape, attempted murder, disturbing the peace, and second degree battery.  Jarrell completed a "Booking Information Sheet" in which he explained the basis of plaintiff's arrest as follows:

> On 2-22-06 at app. 1830 hrs was advised by a motorist at P.D. that a man was chasing a woman around the parking lot of boat landing on Lake Rd.  Upon arrival officer observed victim bleeding  – Arrestee was combatant, placed in cuffs – Resisted and had to be brought to the ground.[16]

Because the City of Madisonville did not have a lockup facility, Jarrell immediately transported plaintiff to the St. Tammany Parish Jail and transferred custody to the St. Tammany Parish Sheriff's Office.  The "Booking Information Sheet" was given to the Sheriff's Office.

On February 27, 2006, a hearing was held by Judge Peter Garcia of the Louisiana Twenty-Second Judicial District Court. Judge Garcia determined that there was probable cause for plaintiff's arrest and set bail in the amount of $147,000.00.

---

[14]  Rec. Doc. 193.

[15]  Rec. Docs. 216 and 227.

[16]  Rec. Doc. 193, Exhibit 2.

By bill of information, plaintiff was subsequently formally charged with attempted second degree murder, attempted forcible rape, second degree kidnaping, and two counts of public intimidation. On March 15, 2007, a jury trial was held and he was convicted on all charges. On March 22, 2007, he was sentenced as follows: on the attempted second degree murder conviction to a term of twenty-five years imprisonment without benefit of parole, probation, or suspension of sentence; on the attempted forcible rape conviction to a term of twenty years imprisonment; on the second degree kidnaping conviction to a term of twenty years imprisonment without benefit of parole, probation, or suspension of sentence; and on each of the convictions for public intimidation to a term of five years imprisonment. It was ordered that his sentences run concurrently. On May 29, 2007, he was subsequently found to be a third offender and was resentenced as such on the attempted second degree murder conviction to a term of life imprisonment without benefit of parole, probation, or suspension of sentence. On February 8, 2008, the Louisiana First Circuit Court of Appeal affirmed the convictions, habitual offender adjudication, and sentences.[17] The Louisiana Supreme Court then denied plaintiff's related writ application on November 21, 2008.[18] After unsuccessfully seeking post-conviction relief in the state courts, plaintiff filed a petition for federal *habeas corpus* relief on April 19, 2010. On October 25, 2010, the undersigned issued a report recommending that the petition be dismissed with prejudice.[19] That Report and Recommendation is currently pending before United States District Judge Jay C. Zainey.

---

[17] State v. Buckenberger, 984 So.2d 751 (La. App. 1st Cir. 2008).

[18] State v. Buckenberger, 996 So.2d 1104 (La. 2008).

[19] Buckenberger v. Cain, Civ. Action No. 10-1194 (E.D. La. Oct. 25, 2010).

As a result of the same 2006 arrest, plaintiff was also charged in a separate bill of information with battery of a police officer, resisting an officer, and simple assault. He pleaded guilty to all three of those charges and, on July 13, 2007, was sentenced on each of those convictions to a concurrent term of sixty days in parish jail.

### III.  Defendants' Motion for Summary Judgment

Two claims remain in this lawsuit:  (1) Jarrell is liable to plaintiff for violating his constitutional rights by failing to ensure that he was afforded a timely judicial probable cause determination; and (2) the City of Madisonville is liable to plaintiff because the foregoing constitutional violation resulted from the City's failure to properly train Jarrell. The defendants seek summary judgment on both of those claims.

### A.  Standards of Summary Judgment

In reviewing a motion for summary judgment, the Court may grant judgment when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S.

317, 324 (1986) (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001).

### B.  Jarrell

As noted, it is claimed that Jarrell violated plaintiff's constitutional rights by failing to ensure that he was afforded a timely judicial probable cause determination.  The United States Supreme Court has held that a state "must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest."  Gerstein v. Pugh, 420 U.S. 103, 125 (1975) (footnotes omitted).  Sixteen years later, in County of Riverside v. McLaughlin, 500 U.S. 44 (1991), the Supreme Court revisited Gerstein because its "promptness" standard had proven to be unworkably vague.  The Supreme Court then held that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of Gerstein."  Id. at 56.

That said, the Supreme Court made clear that the individual states are allowed to develop their own specific procedures to meet that constitutional obligation:

> [W]e recognize that state systems of criminal procedure vary widely.  There is no single preferred pretrial procedure, and the nature of the probable cause determination usually will be shaped to accord with a State's pretrial procedure viewed as a whole.  While we limit our holding to the precise requirement of the Fourth Amendment, we recognize the desirability of flexibility and experimentation by the States.

Gerstein, 420 U.S. at 123.  The procedure adopted by Louisiana is as follows:

> A law enforcement officer effecting the arrest of a person without a warrant shall promptly complete an affidavit of probable cause supporting the arrest of the person and submit the same to a magistrate.  Persons continued or remaining in custody

>pursuant to an arrest made without a warrant shall be entitled to a determination of probable cause within forty-eight hours of arrest. The probable cause determination shall be made by a magistrate and shall not be an adversary proceeding. The determination may be made without the presence of the defendant and may be made upon affidavits or other written evidence. A magistrate's determination of probable cause hereunder shall not act as a waiver of a person's right to a preliminary examination pursuant to Article 292.

La.C.Cr.P. art. 230.2(A).

Despite the wording of article 230.2(A) placing those obligations on the arresting officer, this Court found that extenuating circumstances were present in the instant case which absolved Jarrell of liability. Specifically, shortly after plaintiff's arrest, and certainly long before any impermissible delay occurred, Jarrell, an officer with the Madisonville Police Department, transferred plaintiff into the custody of the St. Tammany Parish Sheriff's Office for detention and all further proceedings. This Court was persuaded that the transfer was sufficient to relieve Jarrell of the obligations imposed under article 230.2(A) because, at that point, neither Jarrell nor the municipal entity with which he was affiliated had custody or control of plaintiff. This Court was of the opinion that transfer of plaintiff to a separate and distinct custodian presumably transferred those obligations to the new custodian.

It was on that point that the United States Fifth Circuit Court of Appeals disagreed. The Fifth Circuit concluded: "While Jarrell may not have been directly responsible for Buckenberger during his custody, under Louisiana law, Jarrell cannot transfer the burden of satisfying Louisiana Code of Criminal Procedure article 230.2 to the St. Tammany Parish Sheriff's Office. Based on the

record and briefs before us, we cannot conclude as a matter of law that Jarrell's failure to provide an affidavit to the magistrate was not causally connected to the deprivation."[20]

The Fifth Circuit based its holding on a case decided by a Louisiana intermediate appellate court: Colquitt v. Claiborne Parish Sheriff's Department, 765 So.2d 471 (La. App. 2nd Cir. 2000). In that case, Colquitt was arrested by police officers from the city of Homer, Louisiana, and booked into the Claiborne Parish Jail. Colquitt thereafter sued the Claiborne Parish Sheriff's Office and the Claiborne Parish Sheriff, alleging that the defendants held him in the parish jail illegally without a judicial probable cause determination within forty-eight hours. The state appellate court rejected that claim, noting that plaintiff had been arrested by the Homer police officers, not the defendants. The state court then held:

> Under La.C.Cr.P. art. 230.2, when a law enforcement officer arrests a person without a warrant, the officer is to promptly complete an affidavit of probable cause and submit it to a magistrate. Persons remaining in custody pursuant to a warrantless arrest are entitled to a determination of probable cause within 48 hours of arrest, and this determination may be made without the presence of the defendant and upon affidavits or other written evidence. If a probable cause determination is not timely made, the arrested person is to be released on his own recognizance.
> In the instant case, the burden of completing the affidavit fell on the Homer police officers who effected Colquitt's arrest. These officers were not employees of the Claiborne Parish Sheriff's Office and were not under the control of the Claiborne Parish Sheriff. Thus, any omission in promptly completing an affidavit of probable cause cannot be attributed to either the Claiborne Parish Sheriff's Office or the Claiborne Parish Sheriff.

Colquitt, 765 So.2d at 472.

---

[20] Rec. Doc. 145; Buckenberger v. Reed, 342 Fed. App'x 58, 63 (5th Cir. 2009) (footnote omitted).

10

Turning now to the instant motion for summary judgment, the Court notes that Jarrell first argues that he is entitled to judgment as a matter of law based on qualified immunity. For the following reasons, the undersigned disagrees.

The United States Fifth Circuit Court of Appeals has explained:

> To determine whether a defendant is entitled to qualified immunity, this court engages in a two-pronged analysis, inquiring (1) whether the plaintiff has alleged a violation of a constitutional right and, if so, (2) whether the defendant's behavior was objectively reasonable under clearly established law at the time the conduct occurred. If the plaintiff fails to state a constitutional claim or if the defendant's conduct was objectively reasonable under clearly established law, then the government official is entitled to qualified immunity.

Hampton v. Oktibbeha County Sheriff Department, 480 F.3d 358, 363 (5th Cir. 2007) (citations omitted).

As to the first prong of that test, it is apparent that plaintiff has alleged a violation of his constitutional right to a timely judicial probable cause determination. Moreover, it is undisputed that he was not in fact afforded a judicial probable cause determination within forty-eight hours as required by Gerstein v. Pugh, 420 U.S. 103, 125 (1975), and County of Riverside v. McLaughlin, 500 U.S. 44 (1991). Therefore, the Fifth Circuit noted: "Buckenberger's allegations show a probable constitutional violation by someone."[21]

As to the second prong, the constitutional right to a judicial probable cause determination within forty-hours was clearly established at the time of the Jarrell's alleged misconduct; indeed, that had been established law for more than two decades at the time of plaintiff's arrest. That said, whether Jarrell's conduct was "objectively reasonable" in view of the fact that he had transferred

---

[21] Buckenberger, 342 Fed. App'x at 64.

11

physical custody to a separate and distinct law enforcement entity along with the booking sheet would, at least to this Court, seem to be a closer call. However, given the Fifth Circuit's express and emphatic holding that Jarrell's obligations under La.C.Cr.P. art. 230.2 were non-transferrable, the Court feels constrained to find that Jarrell's conduct was not objectively reasonable *if* he personally failed to take the necessary steps to secure the judicial probable cause determination. Therefore, *if* that occurred, qualified immunity would not appear to afford him any protection.

Jarrell next essentially argues that did not occur. He opines that he complied with his constitutional obligations by giving the "Booking Information Sheet" to the St. Tammany Parish Sheriff's Office when he transferred custody of plaintiff. However, for the following reasons, that determination cannot be made based on the record currently before the Court.

As noted, Louisiana law provides: "A law enforcement officer effecting the arrest of a person without a warrant shall promptly *complete an affidavit of probable cause* supporting the arrest of the person *and submit the same to a magistrate*." La.C.Crim.P. art. 230.2(A) (emphasis added). In the instant case, without further evidence, this Court is not in a position to conclude that the "Booking Information Sheet" completed by Jarrell is the legal equivalent of the "affidavit of probable cause" required under article 230.2. Moreover, in any event, article 230.2 requires the arresting officer to submit the affidavit to *a magistrate*. In that the Fifth Circuit has determined that the arresting officer's first obligation under article 230.2 (completion of the affidavit) cannot be transferred to others, the same would presumably also be true of the article's second requirement (submission to a magistrate). Here, it is undisputed that Jarrell failed to provide any paperwork to

12

a magistrate. Therefore, based on the present record, the Court cannot conclude as a matter of law that Jarrell took the necessary steps to fulfill his constitutional obligations.

Jarrell next argues the evidence here conclusively shows that probable cause clearly existed and, therefore, plaintiff would not have been released even if a probable cause hearing had been held within forty-eight hours. While that is undoubtedly true and plaintiff clearly suffered no actual injury, those facts do not defeat plaintiff's claim. As the Fifth Circuit held: "The failure to bring Buckenberger before a magistrate within forty-eight hours to determine if probable cause existed is a violation of Buckenberger's Fourth Amendment rights."[22] The Fifth Circuit further held:

> A party who has suffered a violation of a constitutional right is entitled to nominal damages even if he or she cannot show any injury.[FN19] As this court recognized in Lewis v. Woods:
>
>> A violation of constitutional rights is never *de minimis* .... Far from taking no notice of constitutional violations, the law awards nominal damages when such violations occur without causing injury even though no damages will lie for other, lesser torts that do not cause injury.[FN20]
>
>> [FN19] See Carey v. Piphus, 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (stating that "the denial of procedural due process should be actionable for nominal damages without proof of actual injury").
>
>> [FN20] 848 F.2d 649, 651 (5th Cir. 1988).[23]

---

[22] Buckenberger, 342 Fed. App'x at 63.

[23] Id. at 62-63.

Accordingly, while it seems likely that plaintiff will be entitled to nothing more than nominal damages[24] even if he ultimately prevails in this case, this Court cannot use that as a reason to dismiss his claim.

Lastly, to the extent that Jarrell argues that plaintiff's remaining claim is barred by Heck v. Humphrey, 512 U.S. 477 (1994), that argument is clearly incorrect. As the Fifth Circuit explained on appeal: "Buckenberger's claim falls within the narrow range of cases that are not barred by Heck because a determination of the timeliness of his probable cause hearing will not affect the validity of his conviction."[25]

Accordingly, for all of the foregoing reasons, the undersigned finds that the motion for summary judgment should be denied as to Jarrell.

## C.  City of Madisonville

Plaintiff claims that the City of Madisonville is liable because it failed to properly train Jarrell concerning an arresting officer's duty to secure a judicial probable cause determination within forty-eight hours. As the United States Fifth Circuit Court of Appeals has explained:

> A municipality's failure to train its police officers can without question give rise to § 1983 liability.  To prevail on a "failure to train theory" a plaintiff must demonstrate:  (1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question.

---

[24] "The term nominal damages means a trivial sum – usually one cent or one dollar – awarded to a plaintiff whose legal right has been technically violated but who has proved no real damage." Chesapeake & Potomac Tel. Co. v. Clay, 194 F.2d 888, 890 (D.C. Cir. 1952).

[25] Buckenberger, 342 Fed. App'x at 63.

Zarnow v. City of Wichita Falls, Texas, 614 F.3d 161, 170 (5th Cir. 2010) (citation and quotation marks omitted).

Here, the City argues that Jarrell did not violate plaintiff's rights and, *ergo*, the City cannot be found liable for failing to properly train him. However, for the reasons previously explained, based on the record currently before the Court, it cannot be said with certainty that Jarrell fulfilled his constitutional obligations in this case. At this stage of the proceeding, it likewise cannot be said with certainty that the City's training policies were constitutionally adequate and did not cause the violation. Accordingly, the undersigned finds that the motion for summary judgment should likewise be denied as to the City of Madisonville.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that defendants' motion for summary judge, Rec. Doc. 193, be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[26]

---

[26] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

New Orleans, Louisiana, this twenty-ninth day of November, 2010.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**