# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHRISTOPHER BUCKENBERGER | CIVIL ACTION |
| VERSUS | NO. 06-7393 |
| WALTER REED - DISTRICT ATTORNEY, ET AL. | SECTION: "F"(3) |

## REPORT AND RECOMMENDATION

Despite the long history of this case,[1] plaintiff has two claims which remain unresolved. First is plaintiff's claim that his rights were violated when Officer Haywood Jarrell failed to ensure that plaintiff received a judicial determination of probable cause within forty-eight hours after his arrest. Second is his claim that the foregoing violation was caused by the City of Madisonville's failure to adequately train Jarrell. This matter was referred to this undersigned United States Magistrate Judge to conduct an evidentiary hearing on those remaining claims.

### I. Factual Background

The factual background of the instant case is relatively simple. Jarrell, an officer with the Madisonville Police Department, arrested plaintiff on February 22, 2006. Because the City of

---

[1] The case's tortured procedural history is not germane to this Report and Recommendation and, therefore, will not be recounted herein. It is, however, recounted in detail in Buckenberger v. Reed, Civ. Action No. 06-7393, 2010 WL 5476795, at *1-2 (E.D. La. Nov. 30, 2010), adopted, 2010 WL 5475538 (E.D. La. Dec. 28, 2010).

Madisonville did not have a lockup facility, Jarrell immediately transported plaintiff to the St. Tammany Parish Jail and transferred custody to the St. Tammany Parish Sheriff's Office.

On February 27, 2006, a hearing was held by Judge Peter Garcia of the Louisiana Twenty-Second Judicial District Court. Judge Garcia determined that there was probable cause for plaintiff's arrest and set bail in the amount of $147,000.00.

By bill of information, plaintiff was subsequently formally charged with attempted second degree murder, attempted forcible rape, second degree kidnaping, and two counts of public intimidation. On March 15, 2007, a jury trial was held, and he was convicted on all charges. On February 8, 2008, the Louisiana First Circuit Court of Appeal affirmed those convictions,[2] and, on November 21, 2008, the Louisiana Supreme Court denied plaintiff's related writ application.[3] After unsuccessfully seeking post-conviction relief in the state courts, plaintiff then filed a petition for federal *habeas corpus* relief. That petition was dismissed with prejudice,[4] and the matter is now on appeal.

As a result of the same 2006 arrest, plaintiff was also charged in a separate bill of information with battery of a police officer, resisting an officer, and simple assault. He pleaded guilty to all three of those charges.

---

[2] State v. Buckenberger, 984 So.2d 751 (La. App. 1st Cir. 2008).

[3] State v. Buckenberger, 996 So.2d 1104 (La. 2008).

[4] Buckenberger v. Cain, Civ. Action No. 10-1194, 2010 WL 5635613 (E.D. La. Oct. 25, 2010), adopted, 2011 WL 230799 (E.D. La. Jan. 21, 2011).

## II. Evidentiary Hearing

The undersigned conducted an evidentiary hearing in this matter on July 19, 2011, to establish the additional facts necessary to resolve plaintiff's remaining claims. At that hearing, plaintiff appeared *pro se*, and the defendants were represented by counsel.

The first witness to testify was plaintiff himself. He testified that he was arrested by Jarrell and brought to the St. Tammany Parish Jail. Plaintiff had no direct knowledge as to what paperwork Jarrell completed in connection with the arrest. He also had no direct knowledge as to what training, if any, the City of Madisonville provided to Jarrell.

Jarrell then took the stand. He testified that, because the City of Madisonville has no jail, arrestees are brought to the St. Tammany Parish Sheriff's Office ("STPSO") for booking and detention pursuant to protocols established solely by the STPSO. As required by those protocols, Jarrell completed the forms necessary for the STPSO to accept custody of an arrestee. Those forms included a "Booking Information Sheet"[5] and an affidavit of probable cause.[6] Jarrell testified that his involvement in plaintiff's post-arrest processing ceased upon the completion and submission of the forms to the STPSO booking officer. Jarrell said that, pursuant to the established protocols, the STPSO then accepts responsibility from that point forward to ensure that the detainees in their custody receive any required judicial probable cause determinations. Jarrell testified that these procedures and protocols used by the Madisonville Police Department and the STPSO have remained unchanged since the time of plaintiff's arrest.

---

[5] A copy of that booking sheet was admitted into evidence as Defense Exhibit 2.

[6] A copy of that affidavit of probable cause was admitted into evidence as Defense Exhibit 1.

The final witness was Captain Joseph Way of the STPSO. He stated that the municipalities within St. Tammany Parish bring all of their arrestees to the STPSO for booking and detention, except for the City of Slidell which brings only its felony arrestees. The arresting officer is required to provide the STPSO with a form stating that the arrestee was advised of his Miranda rights, a probable cause determination form, and an arrest information form. Way stated that once the forms are completed and custody of an arrestee is transferred, the STPSO then takes over and the arresting officer usually plays no further role in any judicial determination of probable cause. Pursuant to a set schedule, a judicial officer reviews the forms for each arrestee to determine whether probable cause existed for the arrest. Way testified that these same procedures and protocols have remained unchanged since the time of plaintiff's arrest.

### III. Claim Against Jarrell

As noted, plaintiff's first claim is that his rights were violated when Officer Jarrell failed to ensure that plaintiff received a timely judicial probable cause determination. The United States Supreme Court has held that a state "must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer *either before or promptly after arrest*." Gerstein v. Pugh, 420 U.S. 103, 125 (1975) (footnotes omitted; emphasis added).

In the instant case, plaintiff alleged that his rights were violated because he was not afforded a judicial probable cause determination within forty-eight hours *after* his arrest *without a warrant*. That allegation is based on the Supreme Court's subsequent decision in County of Riverside v. McLaughlin, 500 U.S. 44 (1991). In that case, the United States Supreme Court revisited Gerstein

because its "promptness" standard had proven to be unworkably vague in situations involving warrantless arrests. As a result, the Supreme Court held that in those cases "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of Gerstein." Id. at 56.

However, at the evidentiary hearing in the instant case, it came to light that plaintiff's arrest was in fact based in part on an outstanding fugitive warrant from Mississippi. That fact is crucial, because a forty-eight-hour post-arrest judicial determination simply is *not* required when the arrest is based on an outstanding warrant. The probable cause determination made prior to the warrant's issuance is alone sufficient to satisfy Gerstein. See Baker v. McCollan, 443 U.S. 137, 143 (1979) ("[S]ince the probable cause standard for pretrial detention is the same as that for arrest, a person arrested pursuant to a warrant issued by a magistrate on a showing of probable-cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial."); Harris v Payne, 254 Fed. App'x 410, 418 (5th Cir. 2007); Dobbs v. Valdez, Civ. Action No. 3:07-CV-1124, 2008 WL 4526189, at *2 (N.D. Tex. Oct. 8, 2008).

Therefore, although it is undisputed that no post-arrest probable cause hearing was held in this case within forty-eight hours, plaintiff is not necessarily entitled to relief. Rather, to prevail, he must prove either that there was no such outstanding warrant or that the warrant fell outside the parameters of the Baker exception. See Bowden v. City of Electra, 152 Fed. App'x 363, 367 (5th Cir. 2005) ("[A] plaintiff in a suit filed under 42 U.S.C. § 1983 has the burden of proving each element of the constitutional violation."). He has made no such showing in this case. On the contrary, plaintiff does not dispute that the warrant existed and served as a basis for his arrest.

5

Moreover, the affidavit of probable cause,[7] the Booking Information Sheet,[8] and the STPSO Initial Booking Receipt[9] all in fact reference that outstanding warrant as a basis for the arrest. Further, plaintiff has presented no evidence whatsoever establishing that the Baker exception is inapplicable.

Rather, plaintiff argues only that the Mississippi warrant was false or erroneous. However, *even if* there was some problem with that warrant, a fact which has *not* been established, Jarrell testified credibly at the evidentiary hearing that the warrant was still in the law enforcement computer system at the time of plaintiff's arrest. Plaintiff has provided no evidence to the contrary, and, in fact, even acknowledged at the evidentiary hearing that the warrant was not cleared in the system until *after* his probable cause hearing on February 27, 2006, because the STPSO "maliciously designed to try to punish [him]." Therefore, the evidence shows that, at the time of booking, the warrant was outstanding. Moreover, by the time the warrant was subsequently cleared, petitioner's continued detention on the remaining charges was no longer problematic because probable cause for *those* charges had already been determined on February 27 by Judge Garcia.

In light of the foregoing, the Court finds that plaintiff has not met his burden to show that he was subjected to a *warrantless* arrest or, indeed, that he was detained at any time without a prior judicial determination of probable cause. Having failed to prove that he was legally entitled to a

---

[7] Defense Exhibit 1.

[8] Defense Exhibit 2.

[9] Defense Exhibit 3.

post-arrest judicial determination of probable cause prior to February 27, 2006, plaintiff's claim against Jarrell should be dismissed.[10]

---

[10] However, out of an abundance of caution, the Court notes that, if the United States District Judge finds that a post-arrest <u>Gerstein</u> hearing was nevertheless required prior to that date, either because the warrant was insufficient to justify plaintiff's detention or because of the additional charges against plaintiff unrelated to that warrant, plaintiff should then prevail on his claim against Jarrell for the following reasons.

To comply with its constitutional obligations, Louisiana enacted Code of Criminal Procedure article 230, which provides in pertinent part:

> A law enforcement officer effecting the arrest of a person without a warrant shall promptly complete an affidavit of probable cause supporting the arrest of the person and submit the same to a magistrate. Persons continued or remaining in custody pursuant to an arrest made without a warrant shall be entitled to a determination of probable cause within forty-eight hours of arrest. The probable cause determination shall be made by a magistrate and shall not be an adversary proceeding. The determination may be made without the presence of the defendant and may be made upon affidavits or other written evidence. A magistrate's determination of probable cause hereunder shall not act as a waiver of a person's right to a preliminary examination pursuant to Article 292.

La.C.Cr.P. art. 230.2(A).

Although it was established for the first time at the evidentiary hearing that Jarrell in fact completed the affidavit of probable cause required by article 230.2(A), it remains undisputed that he did not "submit the same to a magistrate." Instead, he transferred or delegated that duty to the STPSO pursuant to a longstanding, and continuing, agreement between the City of Madisonville and the STPSO. In its prior decision in this case, the United States Fifth Circuit Court of Appeals did not expressly rule, and this Court does not find, that article 230.2(A) requires an arresting officer to *personally* perform the ministerial duty of submitting the form *directly* into the hands of the magistrate. Nevertheless, the Fifth Circuit's decision made clear that it is the arresting officer who remains ultimately responsible to ensure that the requirements of article 230.2(A) are satisfied. Therefore, if the system breaks down and an arrestee is not provided with a judicial determination within forty-eight hours of a warrantless arrest, it is the arresting officer who is liable for the resulting violation.

That said, if the United States District Judge finds that Jarrell did in fact violate plaintiff's rights in this respect, the undersigned recommends that plaintiff be awarded only nominal damages for the following reasons.

Compensatory damages are not warranted here because plaintiff ultimately suffered no actual harm. As noted, a probable cause hearing was held in this case, albeit arguably three days past the

IV. Claim Against the City of Madisonville

As to plaintiff's failure-to-train claim against the City of Madisonville, the Court finds no merit to that claim. With respect to such claims, the United States Fifth Circuit Court of Appeals has explained:

---

normal deadline, and the judge found that probable cause did in fact exist. This Court agrees. The facts of plaintiff's arrest were recounted in detail in this Court's opinion in plaintiff's related *habeas corpus* proceeding. Buckenberger v. Cain, Civ. Action No. 10-1194, 2010 WL 5635613, at *4-5 (E.D. La. Oct. 25, 2010), adopted, 2011 WL 230799 (E.D. La. Jan. 21, 2011). Based on those facts, it is evident that, even absent the outstanding warrant, probable cause for plaintiff's arrest on the remaining charges was clearly abundant. There is simply no reasonable possibility under those facts that plaintiff would have been released from custody even if a probable cause hearing had been held within forty-eight hours, and he suffered no actual harm resulting from the brief delay.

Plaintiff likewise is not entitled to punitive damages. The United States Fifth Circuit Court of Appeals has explained:

> [P]unitive damages may be awarded only when the defendant's conduct is motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional rights. The latter standard requires recklessness in its subjective form, i.e. a subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations.

Williams v. Kaufman County, 352 F.3d 994, 1015 (5th Cir. 2003) (quotation marks and footnote omitted). Jarrell conducted plaintiff's post-arrest processing in conformity with his training and pursuant to the cooperative arrangement between the City of Madisonville and the STPSO. There is simply no evidence whatsoever that Jarrell had any inkling that the procedures instituted by the the City and the Sheriff's Office might be legally deficient, much less any evidence that he was motivated by evil intent or acted with reckless or callous indifference. Under these facts, an award of punitive damages is obviously unwarranted.

On the other hand, if plaintiff's rights were technically violated, he is entitled to nominal damages. As the United States Fifth Circuit Court of Appeals observed in the instant case: "A party who has suffered a violation of a constitutional right is entitled to nominal damages even if he or she cannot show any injury." Rec. Doc. 145; Buckenberger, 342 Fed. App'x at 62. "The term nominal damages means a trivial sum – usually one cent or one dollar – awarded to a plaintiff whose legal right has been technically violated but who has proved no real damage." Chesapeake & Potomac Tel. Co. v. Clay, 194 F.2d 888, 890 (D.C. Cir. 1952).

> A municipality's failure to train its police officers can without question give rise to § 1983 liability. To prevail on a "failure to train theory" a plaintiff must demonstrate: (1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question.

Zarnow v. City of Wichita Falls, Texas, 614 F.3d 161, 170 (5th Cir. 2010) (citation and quotation marks omitted), cert. denied, 131 S. Ct. 3059 (2011). Because the Court finds that Jarrell did not violate plaintiff's constitutional rights, the related claim against the City of Madisonville necessarily fails on the third prong.[11]

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's remaining claims against Haywood Jarrell and the City of Madisonville be **DISMISSED WITH PREJUDICE**.

---

[11] If, however, the District Judge finds that Jarrell did violate plaintiff's constitutional rights, the claim against the City of Madisonville still fails on the second prong because there was no deliberate indifference in this case. "Deliberate indifference is more than negligence or even gross negligence." Valle v. City of Houston, 613 F.3d 536, 547 (5th Cir. 2010), cert. denied, 131 S.Ct. 2094 (2011). Instead, "deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick v. Thompson, 131 S.Ct. 1350, 1360 (2011) (quotation marks and textual alteration omitted). Therefore, in order to prove that the City acted with deliberate indifference, plaintiff must show that the City's failure "reflect[ed] a deliberate or conscious choice to endanger constitutional rights." Snyder v. Trapagnier, 142 F.3d 791, 799 (5th Cir. 1998) (quotation marks omitted); see also Gonzalez v. Ysleta Independent School District, 996 F.2d 745, 759 (5th Cir. 1993) ("In order for municipal liability to attach, plaintiffs must offer evidence of not simply a decision, but a decision by the city itself to violate the Constitution." (quotation marks omitted)). Here, there is no evidence whatsoever that the City of Madisonville made a deliberate or conscious decision to adopt a deficient training policy or to in *any* way violate municipal arrestees' constitutional right to timely judicial probable cause determinations. Quite to contrary, the City in fact entered into a cooperative arrangement with the STPSO to ensure that such determinations took place. The mere fact that the process broke down on this particular occasion is in no way indicative of deliberate indifference.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[12]

New Orleans, Louisiana, this twenty-ninth day of March, 2012.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[12] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.